Good morning Your Honors, I work for the Missouri County Court of Petitioners. I think I'd like to start with just a quick background. This is obviously an asylum case where the petitioner's application was denied by the immigration judge solely based on finding of adverse credibility. In his oral decision, he did not get into the merits, in other words, whether or not the events that the petitioner discussed in terms of what had happened to her rise to the level of persecution, let's say. He only found what he'd heard wasn't sufficient to give the petitioner credibility to believe whatever she was saying. In discussing why he's finding the petitioner not credible, the immigration judge, and then later the BIA that adopts and reaffirms the judge's decision, the judge discusses the points, not disputing that he does mention what he finds problematic. What I have a problem with is that he doesn't discuss why and how they actually matter, and doesn't discuss at all the petitioner's explanation of some inconsistencies the judge is referring to. But before we even get to that, I find in the record problems with the judge's findings to begin with, and I'll get into why I see it this way. The judge is going based on one major thing, and that is the differences that the judge sees between a first declaration petitioner filed and a second declaration she filed. And they were extremely different. I was troubled by that as well. So in the first, in the 1994, in her asylum, in the asylum application and the affidavit, focuses on what the government or what the robbers, the criminals had done to her. And then in 2000, suddenly the focus has shifted to a whole different series of incidents, and some of the incidents that were described in the asylum application are revised to now reflect that it was police, not criminals. So why wasn't that reasonable for the IJ to rely on those discrepancies? Your Honor has pointed out exactly what I want to discuss today and explain why I think there's a problem there. The second declaration is an updating of the first declaration. They should be looked at it in conjunction. In 1994, when she filed the original asylum application, she testified. I wasn't writing it. She's explaining her story, and someone is writing it down, reflecting what had happened to her. But she wasn't read it back with the declaration. Let me just stop you at that, because I was puzzled by the asylum application, and maybe you can walk me through it. It's got, in the signature section, she signs it under penalty of perjury. There is no signature for a person preparing the form. And then the next section says applicant is not to sign the application until he or she appears before the asylum officer, and she signs it saying that she was aware of the contents of the application. What are we supposed to make of that? Well, only that, unfortunately, the agency does not follow and does not insist on the rules to be followed. The asylum officer sits there and says, have you understood everything? And the applicant says yes, because if she says no, everything stops right there. Asylum applicants are not used to these kind of administrative hearings. They go in there with certain fear of unknown. And even the declaration you look at, the first paragraph says, I'm giving this declaration under penalty of perjury. They have no idea what penalty of perjury means and that it's all true. They're sitting there telling their story to someone. They have no knowledge of the English language and hope that everything that is being said is correctly, accurately being reflected on a piece of paper, which at the end is generally never read back to the applicant. They just hope for the best. So is there any evidence of that, or is it just the statement of the petitioner that she didn't know what she was doing or she didn't understand what it meant? Does she make those statements? And is there anything else that supports that? No. I mean, the petitioner, again, the judge did not find that the petitioner was evasive, did not answer the questions properly. He just didn't like the answer. She testified that clearly in 1994 when she came here, she didn't know English. So she did testify that when she told the story to the person who was writing the declaration, she told everything she knew. What goes on the declaration at the end of the day and is submitted with the application form, she didn't know. She testified that it was never read back to her. That's actually why she eventually, six years later, she did file an updated declaration because at that time now she had attorneys who had talked with her. I mean, that's only logical. Understood, looked at the first declaration, had interviewed her, found out there's a lot more. She testified in court that in the first declaration, I just thought I'll just put, discuss the other events and details later. My presumption is, and I think because that's the only thing we have is the record, is that the reason she would have filed the second one was that somebody told her, look, if there are other events that will help your case, you should put it in there. Let's file a second. Otherwise. Counsel, it's Judge Gould with a question for you. My understanding was that she did tell the IJ that she'd had a problem with the interpreter or her understanding. She didn't have to put everything down. And the problem that I saw in the record was that, if I understand this right, neither the IJ nor the BIA ever addressed her explanation. That's correct, Your Honor. As I said a few minutes ago, my biggest problem isn't that the judge enumerated the difficulties that he had, but that he didn't address the responses and explanations that the petitioner gave. Okay, so there's an opinion called Soto Alarte, which I authored at some time after the government's brief and your brief was submitted. So it's not addressed in the briefing. But it, I think, says that the agency or an IJ has to confront a witness with inconsistencies and then has to give some reasoned explanation of why they are disregarding the witness's explanation, if they have an explanation. I totally agree. Because here, it was, you look at the record, it's as if the IJ and then later BIA just decided, we're not going to say anything, we're just going to put down all the discrepancies we find here, and suddenly hit back. I mean, if you've got a problem with a certain issue, address it. She did give an explanation, though, right? She said, I thought I would just talk about, when asked about the discrepancies, she said, I thought I would just talk about these church-related incidents at the hearing. She did. But the IJ didn't address the explanation. She just said, well, the second declaration is talking about a few other incidents were completely omitted from the first one. Omissions, especially, you know, I think it's, I can't pronounce, it's a solemn moment, I really can't pronounce the name of the case. But it does talk about, especially, we look at, I think the word they use is charitable, this Court uses, look at an application, a declaration by a respondent, who is, doesn't have the English language, files an application that omits, you know, several events, because she doesn't know how to prepare it. Now, the Court, again, the judge didn't address the explanation. There was an explanation. But on top of all of that, she did actually put in a declaration all those events. I mean, you can't look at the first declaration, ignore everything that she's put in another declaration at the time of the merits, and say, well, your first declaration didn't say anything. Well, what about the second one? I did mention new things. That's what we encourage all applicants to do, even in a regular court proceedings. Everything you've got, bring it forward before we have a hearing. She didn't bring all this information at the time of the hearing on the Court. Do you want to save some time for rebuttal? Well, actually, I would like to. You have 37 seconds. I would like to save five, reserve five minutes for rebuttal. You only have 37 seconds left. Sorry. We'll give you a minute. Okay. Am I ten minutes up? Yes. Okay. If you want to save some time for rebuttal. I will save it for the rebuttal. Thank you. May it please the Court. Jennifer Corey for Attorney General Holder. To address what Petitioner's Counsel was saying, in this case, Petitioner was given a reasonable, was given the chance to explain the discrepancies between her first testimony and her Second Testament. In her first test, sorry, between her first declaration and her second declaration, and the stark contrast between them, if you look on, actually, page, or I'll read it to you, 128 of the record, Petitioner says, or the judge asks her about the omission of any of the house events, the Baptist house meeting events, from her first declaration. He says, haven't you identified to me that the asylum application belongs to you and that you signed it? She said, yes. So you know what's in it, don't you? Yes. And you stand by it and its attachments? Yes. In fact, you wrote an affidavit in support of your application, didn't you? Yes. So at that moment, the IJ did. So she makes an explanation. She says, I thought I would talk about these church incidents later at the hearing. And in his opinion, the IJ says something along the lines of, respondent has been extremely insufficient in explaining these inconsistencies or accounting for them. And that was the IJ's determination. Now, is that enough under our case law? Is there something more that the IJ needed to say in addressing the explanation that the Petitioner made? No. It's Petitioner's burden to prove to the IJ that she's reliable, a reliable witness. She submitted her evidence. The IJ asked her in her first hearing and then at her second hearing about the differences in her declarations. At her first hearing, she said, with regard to the omissions, that she had no specific reason for it. And then she also verified that she knew it was in the application. At her second hearing, she said that she just thought that she would discuss them at a later date. That is all the IJ needs to do. Counsel, Judge Gould with a question for you, please. And I don't have the language right in front of me this second, but I'm pretty certain that in the opinion in the Soto Alarte case, which was issued after your briefing, that we said that if someone gives an explanation of an inconsistency, that the IJ has to give some reasoned explanation of why that is insufficient. And that's the element here that I don't see, You might talk me into a different view, but right now, unless I hear something, I'm really thinking we should grant the petition and remand on an open record pursuant to Soto Alarte. Well, Your Honor, I would say that the entire decision gives a reason why those explanations were insufficient. The inconsistencies and contradictions were so numerous. First of all, the two events that the IJ pointed to are the main two components of Petitioner's asylum claim and go straight to the heart of her claim. First, the one about the 1994 incident in which she claimed to have been the victim of an attempted robbery and then subsequently a subsequent kidnapping. But with regards to that event, she gave contradictory testimony in her declarations about who perpetrated the event and whether the police aided her or whether they victimized her, whether the kidnapping was carried out on the basis of her religion, whether it was for the purposes of extortion. Ms. Corky, if Judge Gould, if I could interject, I thought the problem on that point was that the IJ never confronted her with the inconsistency between I was raped by the robbers or I was raped by the police. On the other point, on the omissions of the breaking up of the prayer meetings, she was confronted with that and gave an explanation. And it's just sort of a question, is there an adequate answer to the explanation? But on the who was the perpetrator of rape, I thought she wasn't confronted with that. Am I wrong? No, Your Honor. I don't believe that the IJ actually asked her to clarify whether or not it was the police or the actual robbers who had perpetrated the kidnapping. We have this case that's fairly recent called Kinney Holder where a petitioner was confronted with omissions at the asylum hearing. It's the same issue, discrepancies in different applications. And the petitioner said he felt inclusion in the asylum application was not necessary because the particular issue would be discussed at the hearing. So the same sort of explanation. And then we said this explanation is not persuasive enough to compel the conclusion that the omissions were immaterial. And so this prior decision seems to indicate as a matter of law that explanation is not sufficient. Do we still need, under those circumstances, do we still need to have some explanation from the IJ on the record, given that we're just reviewing the agency determination? Not that I – you're reviewing the agency's determination to find out whether or not there's substantial evidence to support that determination. I don't believe that – I'm sorry, I can't answer that definitely. I don't believe that – Can we have prior decisions that answer that question as a matter of law as to whether the IJ's determination was reasonable, or in every case does there need to be something placed on the record by the IJ to explain it? In other words, are there situations where it's inherently supported by substantial evidence, or does the IJ have to go through the motions in every case or just per se rule that it's insufficient? Right. And that would be my proposition here, that no, the IJ, just based upon the inconsistencies that he pointed out, the numerous inconsistencies, the fact that he at least gave her one – allowed her to try and explain one inconsistency or the omission, that that is inherently enough to support the Board's conclusion that it was not clearly erroneous, and then this Court's conclusion that substantial evidence – that there's nothing to compel the finding that Petitioner was telling the truth. In fact, it's hard to – even if it is, if that is found, it would be hard for the Board then to pick which version of the truth they would go by to then find out if there was eligibility for asylum, if she did prove past persecution or well gone future persecution, because there are so many versions, Your Honor, and so many inconsistencies that that inherently supports the IJ's decision, along with the fact that Petitioner knew what was in her application and stated that directly during her first hearing. So on that – on those facts, and on the facts I don't know whether you want me to point out any more of the other inconsistencies. No, she's – the one inconsistency she's asked about is why didn't you mention these incidents in your first declaration that you mentioned in the second declaration? And her answer is, well, the first declaration was just somebody else was taking it down, and I don't know about the translation. And the judge says, well, you know, that's not a persuasive explanation in his decision. What more should he say? Should he say, well, she signed the – and she answered the question that she knew what was in the declaration, and so I discount that. Did he need to say more under our case law? No, Your Honor, that is absolutely sufficient, especially considering there's nothing clearly erroneous. The big discrepancy, and the only one that was really relied on by the board in the second board decision was the two versions of the robbery, dash, kidnapping, or police misconduct. And the versions are quite different. You know, we were being robbed, and as luck would have it, the police came along, and the other is that the police abducted her and raped her. That's quite a different – those are quite startlingly different. But I guess the I.J. never asked for that discrepancy. He did, Your Honor. The I.J. did, and I think I failed to mention this earlier, and I apologize for that. The I.J. did mention that, and her response was that discrepancy, and her response was that it wasn't – that the declaration wasn't prepared by her, that she was told whatever – that she told the person whatever she remembered. Do you have a record reference? I don't have it right here. I can get it to you. But, yes, so she did say that, which also contradicts her first testimony that she wrote the affidavit. And then second, there's no explanation of why she remembered more about the event ten years after rather than eight months after when the affidavit was written. So the I.J. – she did actually, in fact, get an opportunity to explain both of those inconsistencies or conflicting testimony. And on that, the I.J. did decide that those weren't reasonable, sufficient explanations. And, therefore, I don't know if the Court has any further – further – Ms. Corey? Yes. You were saying, contrary to your earlier answer to my query, that now you realize that she was asked about the discrepancy between the police did it or the robbers did it. Right? And she gave an explanation that she just told her story and someone else prepared. Is that – Yes, Your Honor. Someone else did the declaration. Yes, Your Honor. Just to explain my earlier answer, I was thinking about the specific – whether she was asked about the policeman and the kidnapper. She was asked in general about the differences between her 1994 – between the incident in her first declaration and second declaration. She was given an opportunity to explain that. Yes, Your Honor. Her explanation of that was that it wasn't prepared by her, and her explanation of the omissions was that she thought that she could explain the details at a later event – at a later date during the hearings. The I.J. found that those weren't reasonable explanations for so many inconsistencies and so many omissions that went to the heart of her claim, and the Board affirmed that decision. And therefore, on those facts, respond to requests that this Court deny the petition for review. Thank you, again. I want to address quickly Your Honor's question about do we take Kim v. Holder law. We've said in this court, at least we've said several times, when it comes to adverse credibility, we look at the cases case-by-case basis. Everyone is different. And Kim, there was an initial – Then Soto Olarte we don't need to consider, right? Because we're looking at this case independently. Well, no, not necessarily. But in terms of credible defining facts are always different. I mean, every case has its own minutiae. In this case, we keep arguing, at least the government, first declaration and the court testimony. There was a second declaration. She did talk about it. What I didn't get a chance to talk about, and because it is important, is the perceived inconsistency between the first declaration, the second declaration, in the judge's mind when it comes to the police involvement. All you need to do is read, I think it's administrative record, page 49 – sorry, 456, the first declaration that the petitioner gave and discusses what happened in the 1994 abduction. In the second paragraph of that declaration, after the first short one, it talks about what's happened after Armenia's independence and how the police, the military, and the paramilitary are all former criminals who have taken over, running out of government, and how their actions in dealing with the citizenry created anarchy. Second paragraph, when she's talking about the police, I mean, it's clearly when you're being robbed with two hooligans, police comes, you know, you're happy. It says, luckily, two police came. But then she refers to former criminals talking about the police because she's already described how the police and the military are former criminals. I can't imagine a single reason why someone she has never met before, two little kids who are trying to rob her purse, to refer them as former criminals. She doesn't know anything about their past. They didn't suddenly become former criminals after being taken to the police station. But she has talked about what she discusses or considers as former criminals who are running the police and the military. So when she was referring, and translation has a lot to do with this because she obviously talked to another Armenian who was translating, and to call a police former criminal is really putting it down. Can you wrap up now? In other words, there was no discrepancy, and there was a second declaration, which wasn't different other than adding a few instances anew. Thank you. Thank you. Okay, the case of Manassian v. Holder is submitted. And we'll next hear the case of White v. City of Pasadena.
judges: Canby, Gould, Ikuta